IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. TDC 24-0066 |
| v. | : | |
| ANISSA MAROOF | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION TO SUPPRESS SEARCH WARRANT
RESULTS AND IN THE ALTERNATIVE FOR A _FRANKS_ HEARING**

**INTRODUCTION**

The defendant, Doctor Anissa Maroof, respectfully moves this Court to suppress the results of search warrants executed at her: (1) office; (2) home; and (3) automobile. As explained herein the affidavit in support of the request for the search warrants failed to establish probable cause to believe that Dr. Maroof committed the offense of Distribution Of A Controlled Substance, in violation of 21 United States Code Section 841. Under binding Supreme Court precedent, the charged offense requires proof that Dr. Maroof prescribed controlled substances with the subjective knowledge that her conduct was without authorization. Ruan v. United States, 597 U.S. 450, 467 (2022).

The affidavit in this case was sworn on May 25, 2022, approximately a month before the Supreme Court issued the _Ruan_ decision. The affidavit failed to: (1) state the required _mens rea_ element of the offense; and (2) allege that Dr. Maroof subjectively knew her prescription practices were not authorized. As a result, the affidavit was insufficient as a matter of law to establish probable cause for the offense.

Moreover, the affidavit requested permission to search the entirety of the defendant's home and office and thus, the scope of the warrant was also extraordinarily overbroad

1

and amounted to a general search prohibited by the Fourth Amendment.[1]

Finally, as explained in greater length in the defendant's Motion To Compel (which is being contemporaneously filed with the Court) there is good reason to believe the affiant was not qualified to make "expert opinions" that were critical to the probable cause determination. Accordingly, the defense believes that while the affidavit is insufficient as a matter of law, if the Court determines that probable cause existed, the defense requests an evidentiary hearing to test the affiant's credibility and the basis of his opinions. See Franks v. Delaware, 438 U.S. 154 (1978).

## RELEVANT FACTUAL BACKGROUND

On June 1, 2022, armed law enforcement agents from the Federal Bureau of Investigation and the Drug Enforcement Administration executed a search warrant at the defendant's home in Bethesda, Maryland. Thereafter they searched the defendant's medical office, also located in Bethesda. The warrants were obtained based upon the affidavit of Maryland police officer Ian Iacoviello, who is assigned as a Task Force Officer (TFO) to the Federal Bureau of Investigation.

1. *A Summary Of The Affidavit*

The affidavit (which is being filed under seal with the court in connection with the defense Motion To Compel) is divided into several different subjects. It begins with a recitation of the TFO's professional experience. The affidavit, however, does not contain any basis for the reviewing judicial officer to believe that by virtue of either education and/or experience, the TFO was qualified to offer expert opinions about the pharmacological effects of using different

---

[1] The search warrant return for the defendant's vehicle indicates that "no items" were seized. Accordingly, this motion is directed to the search of Dr. Maroof's office and home. In addition, although the affidavit alleged that the scope of the investigation against Dr. Maroof included violation of 21 United States Code Section 843(b), the use of communications facilities to facilitate the commission of drug offenses, the affiant made no effort to establish probable cause for this offense.

controlled substances in combination and/or the standard of care for physicians prescribing controlled substances as part of an opioid addiction practice.

The affidavit next summarizes the relevant statutory scheme governing the licensing and issuance of controlled substances by medical professionals. It then alleges that the investigation of Dr. Maroof began as follows:

> In October 2020, your affiant was notified of an arrest of an individual in Clarksburg, West Virginia who was in possession of a large amount of buprenorphine, Xanax and Adderall pills. The pills were in prescription bottles marked with the individual's name and listed MAROOF as the prescribing physician. Your affiant spoke with the arresting deputy, who is employed by the Harrison County Sheriff's Department, and learned that, over the prior weeks, the deputy had encountered other people in the area that were obtaining large amounts of prescription medication from MAROOF (para. 18).

The affidavit provides no additional supporting details for these events in West Virginia and thus, it is impossible from the four corners of the affidavit to determine how these events establish that Dr. Maroof knowingly and intentionally prescribed medication outside of the ordinary course of her medical practice.

The affidavit goes on to explain that the TFO reviewed the Maryland Prescription Review Monitoring Program (PDMP) which revealed that Dr. Maroof was treating patients who lived in West Virginia. TFO Iacoviello then makes a sweeping generalization – without support - as to the significance of treating patients who live in a different state.

> Based on training and experience, your affiant is aware that traveling such distances and bypassing other medical practitioners and offices to obtain controlled substance prescriptions is indicative of a practitioner operating outside the scope of professional practice (para. 20).

The reason why patients traveled to Dr. Maroof in Maryland has nothing to do with her subjective knowledge as to whether her prescriptions were unauthorized or outside the ordinary course of her medical practice. Prior to submitting the affidavit TFO Iacoviello apparently did

not interview any of Dr. Maroof's West Virginia patients and on the record before the reviewing magistrate, their possible motives for traveling adds nothing to the probable cause analysis.

The affidavit then summarizes in detail the activities of two Undercover Informants who obtained prescriptions from Dr. Maroof. These include questions posed by the doctor to her patients concerning their medical history, symptoms and treatment plans. Interspersed throughout the narrative, however, are TFO Iacoviello's opinions concerning the interactions of various controlled substances, as well as opinions concerning the merits of the services provided by a licensed medical practitioner. Thus, for example, Iacoviello asserted, *inter alia*:

> buprenorphine, Xanax, and Adderall are "not recommended to be prescribed together because of the neutralizing effect they may cause" (para 23);
>
> Based on your affiant's training and experience, the prescription for buprenorphine based on a stated single use of heroin was invalid and had no legitimate purpose (para 33); or
>
> Based upon my training and experience, your affiant knows that the previous descriptions of UC-1's and UC-2's appointments with MAROOF are inconsistent with standard medical treatment (para 51); or
>
> MAROOF did not taper UC-2 off of buprenorphine, but continued to issue him prescriptions (with refill authorizations) at subsequent visits. Although buprenorphine has been approved for the treatment of substance abuse, I am also aware that buprenorphine may also be abused and may be prescribed outside the scope of prevailing standards without a legitimate medical purpose (para 52).

The technical, medical opinions expressed by TFO Iacoviello were made without any explanation of his qualification to make such conclusions. More importantly, none of the conclusions even remotely establish probable cause to believe that Dr. Maroof subjectively knew and intended to prescribe controlled substances without authorization.

# LEGAL OVERVIEW

1. **The Search Warrants Violated the Fourth Amendment Because It Failed To Establish Probable Cause**

In our constitutional system, law enforcement does not have free reign to conduct searches of people, places, and things without sufficient justification. By its express terms, the Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Amendment operates to protect legitimate expectations of privacy and "official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause. Carpenter v. United States, 585 U.S. 296, 304 (2018)(internal quotations omitted.

Probable cause in turn:

> is a practical, nontechnical conception dealing with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. However, [t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized with respect to the person to be searched or seized.

McDaniel v. Arnold, 898 F. Supp. 2d 809, 841 (D. Md. 2012)(internal quotations and citations omitted).

In this case, TFO Iacoviello's affidavit in support of the search warrants for Dr. Maroof's home and office did not establish probable cause because it failed to allege the required mental state for a violation of the Controlled Substances Act. The affidavit did not allege directly, nor set forth any basis to conclude, that Dr. Maroof knowingly and intentionally prescribed medications that were not authorized. Under the *Ruan* decision, this was fatal error in the

Government's effort to establish probable cause. This failure should end the Courts' inquiry and result in the suppression of all the search warrant results.

   2. **This Court Should Conduct A *Franks* Hearing**

If the Court nonetheless finds that probable cause existed withing the four corners of the affidavit, it should then conduct a *Franks* hearing and assess the qualifications and credibility of the affiant, TFO Iacoviello.

When a defendant challenges a search warrant, the government has the burden of proving probable cause by a preponderance of the evidence. United States v. Matlock, 415 U.S. 164, 177-78 n.14 (1974). In reviewing the probable cause determination, this Court may consider only the information presented to the magistrate who issued the warrant. United States v. Wilhelm, 80 F.3d at 116, 118 (4th Cir. 1996).

Although a criminal defendant is not ordinarily entitled to an evidentiary hearing with respect to the contents of the affidavit in support of the search warrant, in Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court has authorized an exception to the rule when the accused challenges the veracity of the representations. In order to warrant a *Franks* hearing, the defendant must make a "substantial preliminary showing" that (1) law enforcement made "a false statement"; (2) the false statement was made "knowingly and intentionally, or with reckless disregard for the truth"; and (3) the false statement was "necessary to the finding of probable cause." United States v. Moody, 931 F.3d 366, 370 (4th Cir. 2019).

In this regard, a defendant can also prevail if it can establish by a preponderance of the evidence that the affiant "omitted information with the intent to mislead the magistrate or that he omitted the information with reckless disregard of whether it would make the affidavit misleading." United States v. Lull, 824 F.3d 109, 115 (4th Cir. 2016). In Lull, the Court of

Appeals ruled that the affiant withheld critical information concerning the reliability of the confidential informant from the reviewing court and suppressed the fruits of the search warrant for the defendant's home.

In this case, the defense believes that the representations contained in TFO Iacoviello's affidavit are subject to challenge in several significant ways. In summary, it does not reasonably appear that the TFO had anywhere near the required educational and/or practical experience necessary to render the opinions contained in his affidavit. The TFO did not explain how he reached conclusions about the complex pharmacological interactions between various controlled substances. More importantly, he unequivocally asserted that prescriptions written by Dr. Maroof - a board trained and certified physician - were done outside of prevailing medical standards and for no legitimate purpose. This type of allegation requires a demonstrated, long-term expertise in medicine and opioid addiction treatment; qualifications that TFO Iacoviello does not appear to even remotely possess.

## CONCLUSION

For all of these reasons, the defense respectfully requests that this Motion To Suppress, or in the alternative for a *Franks* hearing be granted. An appropriate draft Order is attached hereto for the Court's consideration.

Respectfully submitted,

*Robert Feitel*

_____
Robert Feitel, Esquire
1300 Pennsylvania Avenue, N.W.
Washington, D.C. 20008
Maryland Pro Hac Vice Bar No. 31073
202-255-6637 (cellular)
RF@RfeitelLaw.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via ECF, to, Assistant United States Attorneys Christopher Sarma and Elizabeth Wright, this 5th day of July, 2024.

*Robert Feitel*

_____

Robert Feitel