**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**UNITED STATES OF AMERICA**

    v.

                                          **Criminal No. TDC-24-066**

**ANISSA MAROOF,**

    **Defendant.**

**RESPONSE OF THE UNITED STATES IN OPPOSITION
TO DEFENDANT'S DISCOVERY MOTIONS [ECF NOS. 31, 35, 38]**

## Table of Contents

INTRODUCTION ..................................................................................................................... 2

FACTUAL AND PROCEDURAL BACKGROUND ................................................................. 2

ARGUMENT ............................................................................................................................ 2

  I.  Motion to Compel Information Related to the Search Warrant Affidavit
    [ECF No. 31] ............................................................................................................. 2

  II.  Motion For Notice of Other Crimes Evidence [ECF No. 35] ........................................ 2

    A.  Legal Standard ..................................................................................................... 2

    B.  Evidence of the Defendant's Broader Drug-Distribution Practices Is Admissible as
       Intrinsic Evidence to the Crimes Charged. .............................................................. 3

  III.  Motion for Production or *In Camera* Inspection of Grand Jury Minutes [ECF No.
    38] ........................................................................................................................... 12

    A.  Legal Standard ................................................................................................... 12

    B.  The Defendant Has Not Shown a Factual Basis Establishing that the Government
       Incorrectly Instructed the Grand Jury on the Elements as to Counts One through
       Seven. .................................................................................................................. 14

    C.  The Defendant's Factual Disagreement with Count Eight Does Not Justify
       Releasing the Grand Jury Minutes. ....................................................................... 17

CONCLUSION ...................................................................................................................... 18

**INTRODUCTION**

The government respectfully requests that the Court:

• Deny as moot the defendant's, Anissa Maroof's ("Defendant's"), motion to compel information related to the search warrant affidavit, ECF No. 31;

• Deny the motion for notice of other crimes, ECF No. 35, because information on the Defendant's other illicit prescriptions and broader prescribing practices is intrinsic to the crimes charged and, even if it were not, such evidence would also be admissible in the government's case in chief under Fed. R. Evid. 404(b)—as to which notice is not yet due (and will instead be provided in due course before trial); and

• Deny the motion to inspect the grand jury minutes, ECF No. 38, because the Defendant has failed to show that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.

**FACTUAL AND PROCEDURAL BACKGROUND**

The government incorporates the factual and procedural background from its opposition to the motion to suppress search warrant results and in the alternative for a *Franks* hearing, ECF No. 55.

**ARGUMENT**

**I.    Motion to Compel Information Related to the Search Warrant Affidavit [ECF No. 31]**

The government understands through communications with counsel for the Defendant that this motion is now moot.

**II.    Motion For Notice of Other Crimes Evidence [ECF No. 35]**

**A.  Legal Standard**

According to Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  In turn, "[r]elevant evidence is admissible" unless the Constitution, a federal statute, or other rules provide otherwise.  Fed. R. Evid. 402. According to Federal Rule of Evidence 404(b), then, "[e]vidence of any other crime, wrong, or act

is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but it "*may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.*"  Fed. R. Evid. 404(b) (emphasis added).

As the Fourth Circuit has summarized, moreover, "[w]e have consistently held that 'acts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence.'" *United States v. Bush*, 944 F.3d 189, 195-96 (4th Cir. 2019) (citing *United States v. Chin*, 83 F.3d 83, 87-88 (4th Cir. 1996); *United States v. McBride*, 676 F.3d 385, 396 (4th Cir. 2012)).  "[O]ther criminal acts are 'intrinsic when they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.'"  *Id.* at 396 (quoting *Chin*, 83 F.3d at 88 (internal quotation marks omitted)).  "And such evidence 'is inextricably intertwined with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.'"  *Id.* (collecting cases, including citing *McBride*, 676 F.3d at 396, for the principle that "[e]vidence of uncharged conduct arising out of the same series of transactions as the charged offense . . . do[es] not qualify as evidence of 'other crimes' subject to scrutiny under Rule 404(b)").  The Fourth Circuit has "also recognized that evidence is intrinsic when it 'serve[s] to complete the story of the crime on trial.'"  *Id.* (citations omitted); *United States v. Lee*, 60 F. App'x 425, 427 (4th Cir. 2003).  For such evidence, no 404(b) notice is required, and the evidence is admissible in the government's case in chief.

### B. Evidence of the Defendant's Broader Drug-Distribution Practices Is Admissible as Intrinsic Evidence to the Crimes Charged.

All the Defendant's unlawful prescriptions and her practices of improper prescriptions—such as Dr. Chambers has outlined—are intrinsic at the very least to Count Eight, which charges

the Defendant with maintaining a drug-involved premises—and accordingly are fully admissible at the trial of this case.  The Defendant's overall improper prescribing practices and prescriptions are intrinsic to the distribution charges in Counts One through Seven, as well.[1]  Accordingly, the Defendant's request for notice pursuant to Fed. R. Evid. 404(b) as to that evidence should be denied.

First, as to Count Eight, courts have made clear that the entire scope of criminal conduct as to drug-involved premises is admissible at trial—as necessary to prove a violation of Section 856.  As one district court summarized: "With respect to a conviction under 21 U.S.C. § 856, the government must prove that [a doctor]: (1) opened, leased, rented, used, or maintained the premises identified in the indictment, either permanently or temporarily; (2) did so knowingly; and (3) did so for the purpose of illegally distributing the controlled substances identified in the indictment not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice."  *United States v. Nasher-Alneam*, 399 F. Supp. 3d 561, 565 (S.D. W. Va. 2019).  "The government does not have to prove that illegal drug dealing was the sole purpose for which [the doctor] maintained his medical practice.  However, it must prove beyond a reasonable doubt that illegal drug dealing was a primary or principal reason the defendant maintained his medical practice."  *Id.* at 565-66 (citing, *e.g.*, *United States v. Russell*, 595 F.3d 633, 644 (6th Cir. 2010)).

As such, that court concluded:  "Therefore, evidence regarding the overall scope of defendant's medical practice is relevant to proving the elements of the crime, *i.e.*, whether [the

---

[1] Absent those bases for admission, other illicit prescriptions could be charged as other substantive counts, or all could also be intrinsic to a conspiracy charge—as the Defendant acknowledges, *see* ECF No. 35 at 3-4—which may be presented to the Grand Jury for consideration as to the Defendant.  Even absent such additional charges, however, the evidence is admissible here.

doctor]'s alleged distribution of controlled substances not for a legitimate medical purpose was a 'primary or principal' purpose for his medical practice. Accordingly, with respect to these [Section 856] counts, evidence concerning defendant's overall practice is not Rule 404 evidence but, rather, evidence relevant to the charges." *Id.* at 566-67. *Accord, e.g.*, *United States v. Cole*, 488 F. Supp.2d 792, 805 (N.D. Iowa 2007) (concluding that testimony from a witness that "he observed the traffic coming and going from [the defendant]'s residence is closely and inextricably intertwined with the charged crime of maintaining premises for drug crimes. . . . Indeed, such evidence goes to the heart of the issue of whether [the defendant] knowingly opened, maintained, managed, controlled, and made available for use his residence for the purpose of unlawfully storing, distributing, and using crack cocaine, all in violation of 21 U.S.C. § 856(a)(1) and (2), so that it is, in the court's view, 'direct' evidence of the crime of maintaining premises for drug crimes.").

As the court in *Nasher-Alneam* continued, given the government's need to prove that the "primary or principal purpose" of a defendant's medical practice was to unlawfully distribute controlled substances: "To that end, overall practice evidence . . . is widely used in prosecutions involving medical establishments under 21 U.S.C. § 856." 399 F. Supp. 3d at 567. The district court collected several cases to that effect. *Id.* (citing, *e.g.*, *United States v. Li*, NO. 3:16-CR-0194, 2019 WL 1126093, *2, 9-10 (M.D. Pa. Mar. 12, 2019) (admitting as evidence in prosecution against physician under 21 U.S.C. §§ 841(a)(1), 861(f), and 856(a)(1): "the complete medical record of every one of his patients;" testimony from 19 former patients; testimony from eight pharmacists "regarding concerns with the frequency and strength of the prescriptions for opioids prescribed" by the defendant; testimony from an expert who had reviewed the files of 60 patients although only 24 patients were named in indictment; PDMP data "for all prescriptions written by

[the defendant] from January 2011 through January 2015"; and ARCOS data from area pharmacies between 2011 and 2015); *United States v. Sadler*, No. 1:10-CR-098, 2012 WL 3527084, at *5 (S.D. Ohio Aug. 15, 2012) (finding sufficient evidence under Section 856 where the evidence included "mass-produced features of patient charts, the remarkable similarity of the regimen of drugs prescribed and dispensed to clinic clients, and the character of the clientele as described by neighboring tenants and by pharmacists who refused to fill their prescriptions").

The court specifically found: "As to evidence regarding patients not specifically named in the indictment, that evidence is not 404(b) evidence but, rather, 'intrinsic and relevant' with respect to the premises charges and, therefore, admissible." *Id.* at 568. The same conclusion applies here. *See also, e.g.*, *Li*, 2019 WL 1126093, at *11 (approving of testimony from any former patients who were not listed in specific counts as intrinsic to the drug-involved premises counts). Thus, "courts have routinely not limited the introduction of such evidence," *Nasher-Alneam*, 399 F. Supp. 3d at 568 (citation omitted), and it should not be limited here. *See also, e.g.*, *United States v. Spayd*, No. 3:19-CR-0111-JMK, 2022 WL 4367621, at *3-5 (D. Alaska Sept. 20, 2022) (ruling that practice-wide data was admissible for a drug-involved premises count, as for other counts, "because it is inextricably intertwined with the drug-involved premises charge as it is relevant to whether the illegal distribution of controlled substances was one of the primary or principal purposes for which [the defendant]'s practice was maintained"); *United States v. Kraynak*, No. 4:17-CR-00403, 2021 WL 3077505, at *4 (M.D. Pa. July 20, 2021) (finding that broader prescribing information "would be admissible in cases related to allegations that [a doctor] maintained drug-involved premises, as they are relevant to determine whether [the doctor's] prescription practices were outside the usual course of professional practice and without a legitimate medical purpose and, consequently, that the activities that occurred in those premises

violated the Controlled Substances Act"). This includes, as described above, evidence from West Virginia patients both subject to the charged accounts and otherwise, and data regarding this full subset of patients, in order to prove the violation of Section 856.

The Defendant does not appear to even contest that such evidence would be admissible to prosecuting a Section 856 charge, instead focusing her motion on Counts One through Seven. ECF No. 35 at 4.

As to Counts One through Seven, even if attempts to exclude evidence of non-charged prescriptions might have had some traction before *Ruan v. United States*, 597 U.S. 450 (2022), that argument can no longer hold sway because the Supreme Court established a further *mens rea* requirement in that case. That is, especially after *Ruan*, as to the seven substantive distribution counts for specific dates, the Defendant's other prescriptions issued to and practices for West Virginia patients, both individually and collectively, are intrinsic, as well—being central to showings of the nature of the defendant's professional practice and the defendant's requisite knowledge and intent as to the prescriptions charged. In *Ruan*, the Court held that the government must "prov[e] that a defendant knew or intended that his or her conduct was unauthorized," *id.* at 467, and overall prescription evidence is fully relevant to the Defendant's knowledge and whether the Defendant was prescribing within the bounds of professional medical practice. "[A] lack of authorization is often the critical thing distinguishing wrongful from proper conduct." *Id.* at 460. The volume and consistency of practices with which the Defendant was prescribing the drugs at issue is therefore key evidence in this case as to the specific prescriptions charged. *See United States v. Sadrinia*, No. CR 22-28-DLB-CJS, (E.D. Ky. Sept. 20, 2023), ECF No. 145, Ex. A (Excerpt of Transcript of Jury Trial, Day 1). As the district court explained in *Sadrinia*, "One's practices are the quintessential type of evidence that I think *Ruan* anticipates." Ex. A at 27. That

is because the "United States has to show that a defendant doctor knowingly or intentionally acted in an unauthorized manner; that he had, in essence, ill intent." *Id.*

Even as to the distribution counts alone, all the other conduct with the individuals whose prescriptions are charged forms the most classic intrinsic evidence, both as "necessary preliminaries" and as "'it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.'" *Bush*, 944 F.3d at 196. Certainly, the patients are entitled to explain their full relationship with the Defendant in order to shed light on the charged prescriptions, including testifying as to text messages and in-person communications that they exchanged. And the Defendant's overall practice evidence as expressed by PDMP and other data and Dr. Chambers' analysis of patient files also plainly qualifies, as it "aris[es] out of the same series of transactions as the charged offense[s]" and provides the context of the Defendant's lack of a normal professional practice. A third category of evidence also qualifies as intrinsic but also, at the least, would be admissible under Rule 404(b): accounts of and other evidence (such as text messages) as to other West Virginia patients such as those who had specific interactions with the Defendant about diversion, other illicit drug use, and the like—as information on those relationships and prescriptions also arise out of the same series of transactions and are necessary to tell the story of the Defendant's criminal conduct at issue.

In sum, here, the Indictment identifies seven patients and charges a single unlawful prescription for each patient. At minimum, to complete the story with respect to each individual count, the patients identified in the Indictment must be allowed to testify about all the prescriptions they received from the Defendant, and overall practice evidence must be admitted (points consistent with *United States v. Brizuela*, 962 F.3d 784 (4th Cir. 2020), described below). The Defendant argues that the seven charged distribution counts amount to "independent, stand alone,

drug trafficking charges," ECF No. 35 at 4, but this argument ignores the government's burden to prove *mens rea* at trial.   If the government could elicit information only about the seven prescriptions in the Indictment, the jury would be left with an "incomplete or inaccurate view of other evidence or of the story of the crime itself." *Brizuela*, 962 F.3d at 795; *see also, e.g.*, *United States v. Kistler*, No. 2:22-CR-067, 2023 WL 1099726, at \*5 (S.D. Ohio Jan. 30, 2023) (admitting evidence even of an overdose of a patient with a charged prescription).  The same holds true if the jury could only hear anecdotal information about the Defendant's practices from the West Virginia patients with a charged count.   Broader evidence of the Defendant's prescribing practices— including but not limited to text message communications between the Defendant and other patients—is now necessary to complete the story of the crimes charged.  *See* Ex. A at 28-29 (noting that post-*Ruan*, "it's not as simple as, on or about such and such a date, the defendant knowingly or intentionally distributed [the controlled substance at issue]. . . .  His knowing and intentional aspect of that, if we just look at it with blinders and say, 'Okay, on that date, did he knowingly or intentionally,' I think that would be – I don't think that's what *Ruan* anticipates.  I don't think that is what it contemplates.  I think it unreasonably hamstrings the government in this type of case to prove what they need to prove to establish their burden of proof").

Even before *Ruan*, indeed, overall practice evidence was appropriately admitted.  In *United States v. Kraynak*, 553 F. Supp. 3d 245 (M.D. Pa. 2021), to take an example, the district court ruled in favor of the introduction of PDMP data covering a period of at least 3.5 years in a distribution case, reasoning: "This evidence demonstrates that Kraynak prescribed significant quantities of controlled substances to his patients, which 'directly proves the charged offense' and therefore constitutes intrinsic evidence, as this evidence is relevant to the question of whether Kraynak issued prescriptions outside the usual course of professional practice and not for a

legitimate medical purpose." *Id.* at 252-54 (collecting cases) (also ruling in favor of the admission

of pharmacy records and insurer information).  Such evidence should be admitted on such a basis

here, as well.  *See also, e.g.*, *United States v. Merrill*, 513 F.3d 1293, 1300-01 (11th Cir. 2008)

(affirming the district court's admission of a summary chart showing "evidence of more than

33,000 prescriptions for controlled substances that [the defendant] wrote between January 2001

and May 2004" and that 99.4% of these prescriptions were for controlled substances).

        *Ruan* makes the evidence all the more necessary.  As the *Sadrinia* court summarized post-

*Ruan*, when deciding to admit evidence from a defendant's office manager: "If the defendant was

doing things during his practice which is relevant to the jury's determination as to whether or not

he knew—that *he* knew, not just a reasonable doctor—that *he* knew that what he was doing was,

perhaps, unauthorized, that's the type of evidence that comes in."  Ex. A at 28 (addressing practice

evidence in a single-distribution case) (emphases added).

        While at first blush the Fourth Circuit's decision in *United States v. Brizuela* might suggest

that the third type of evidence which is from *other* West Virginia patients (*i.e.*, anecdotal testimony

from patients other than those with charged prescriptions and beyond higher-level data analysis),

is not so broadly admissible as data in the first two categories (from patients with charged

prescriptions and PDMP-type data), that decision is distinguishable—even separately from the fact

that *Brizuela* did not involve any charge under Section 856.  962 F.3d at 791-93.  The challenged

testimony in *Brizuela* came from four specific other patients, telling full anecdotal accounts of

their experiences, who were not named in the indictment, and lacked some of the additional

background that will be presented here.  But most notably, that decision was issued before *Ruan*

and thus did not consider the burden the government must satisfy to show that the Defendant acted

with the requisite *mens rea* under the current law—which requires a much more substantial

10

showing of the context in which the charged prescriptions were issued than was relevant or necessary before.  This evidence is intrinsic to the charged crimes.

Accordingly, the Defendant's motion should be denied.

Even if the evidence at issue were not intrinsic to the charged crimes, moreover, it would be admissible under Fed. R. Evid. 404(b).  All the evidence at issue here is relevant because it is probative of the Defendant's motive, intent, preparation, knowledge, identity, and absence of mistake or accident as to the charged distributions, including specifically evidence from other West Virginia patients.  *See McBride*, 676 F.3d at 397 (noting that "[t]he more closely that the prior act is related to the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the prior act"); *see also Huddleston v. United States*, 485 U.S. 681, 685 (1988) ("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.").  Indeed, the Defendant does not dispute this point, but simply notes that the government is required to provide notice of its intent to admit such evidence, ECF No. 35 at 4-6—which the government intends to do in the lead-up to trial as part of its standard practice for any desired evidence that is not deemed intrinsic to the charged crimes, or out of an abundance of caution.  *Accord, e.g.*, *United States v. Lague*, 971 F.3d 1032, 1040 (9th Cir. 2020) (holding "that uncharged prescriptions of controlled substances in enormous quantities, and in dangerous combinations, support a reasonable inference that the underlying prescriptions were issued outside the usual course of professional practice and without a legitimate medical purpose," in support of admissibility of such evidence under Rule 404(b)); *Kraynak*, 553 F. Supp. 3d at 257-58 (although finding PDMP and other data intrinsic to the charged crimes, adding that the evidence would also be admissible under Rule 404(b)).  Per the Court's prior order,

any such 404(b) notices, however, are not due until 30 days before trial.  *See* ECF No. 18 at 3.  The Defendant provides no bases for early disclosure in this case.

Lastly, the probative value of this evidence is not substantially outweighed by confusion or unfair prejudice, so Rule 403 does not bar introduction of the evidence.  *See United States v. Siegel*, 536 F.3d 306, 320 (4th Cir. 2008) (noting that for probative evidence, "'the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly'") (quoting *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996)).  Indeed, even evidence otherwise admissible under Rule 404(b)(2) is not typically barred by Rule 403 "where such evidence did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged."  *United States v. Byers*, 649 F.3d 197, 210 (4th Cir. 2011) (internal quotation marks omitted).  The evidence here passes this test:  It is highly probative but establishes past conduct no more "sensational" than the exact crimes charged.  *See also, e.g.*, *United States v. Iwas*, No. 18-20769, 2023 WL 6702114, at *6-7 (E.D. Mich. Oct. 12, 2023) (summarizing that "courts have allowed the admission of practice-wide prescription data," both as intrinsic and under Rule 404(b), "especially on the issue of a defendant's intent"); *United States v. Parker*, No. 4:19-CR-40018, 2022 WL 4280661, at *1-6 (W.D. Ark. Sept. 15, 2022) (finding that additional prescriptions prescribed by the defendant to patients whose care was the subject of the indictment, testimony from patients of the defendant whose care was not the subject of the indictment, and practice-wide prescription data, was admissible evidence under Rule 404(b)).

### III.    Motion for Production or *In Camera* Inspection of Grand Jury Minutes [ECF No. 38]

#### A.  Legal Standard

The Court should deny the Defendant's motion to inspect the grand jury minutes from the presentation of her Indictment because the Defendant has not "show[n] that a ground may exist to

dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). This federal rule permitting inspection of grand jury minutes is not intended as "an invitation to engage in a fishing expedition to search for grand jury wrongdoing and abuse when there are no grounds to believe that any wrongdoing or abuse has occurred." *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004).

Rather, because grand jury proceedings receive "a strong presumption of regularity," a defendant "bears the heavy burden of establishing that 'particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment.'" *Id.* (quoting *United States v. Abcasis*, 785 F. Supp. 1113, 1119 (E.D.N.Y. 1992)); *see United States v. Jenkins*, No. CR SAG-23-0123, 2023 WL 4205840, at *1 (D. Md. June 27, 2023) (denying motion because defendant "offer[ed] no actual facts suggesting that wrongdoing or abuse occurred"). The defendant's "particularized need" burden applies to defendants' motions in that "to obtain disclosure of grand jury instructions, she must demonstrate particularized need." *United States v. Smith*, 105 F. Supp. 3d 255, 260 (W.D.N.Y. 2015). Some courts have even held that "'a defendant must support allegations of grand jury misconduct or abuse with affidavits or other proffered evidence' and that '[s]uch affidavits or other evidence should be of a particularity sufficient to support a finding that 'inherently suspect' procedures were used before the grand jury.'" *Loc Tien Nguyen*, 314 F. Supp. 2d at 616 (quoting *United States v. Shane*, 584 F. Supp. 364, 367 (E.D. Pa. 1984)). Similarly, a court should not undertake an *in camera* review of a grand jury transcript if the defendant's motion relies on "mere unsupported pleadings." *United States v. Shane*, 584 F. Supp. 364, 367 (E.D. Pa. 1984).

### B. The Defendant Has Not Shown a Factual Basis Establishing that the Government Incorrectly Instructed the Grand Jury on the Elements as to Counts One through Seven.

The Defendant's mere speculation that the government did not properly instruct the grand jury on the elements of 21 U.S.C. § 841 does not satisfy the "particularized need" standard. "Challenges going only to the instructions given to the grand jury as to the elements of the offenses are not grounds for dismissal of an indictment that is valid on its face." *United States v. Buchanan*, 787 F.2d 477, 487 (10th Cir. 1986); *United States v. Welch*, 201 F.R.D. 521, 525 (D. Utah 2001) (denying motion for *in camera* review because there was "no deficiency in the indictment"). Therefore, as long as the indictment correctly alleges all elements of the crime, a defendant cannot successfully secure the dismissal of the indictment for failure to properly instruct the jury. *See United States v. Vanderhorst*, 2 F. Supp. 3d 792, 797 (D.S.C. 2014); *see also United States v. Baver*, No. 2:21-CR-00520-JNP, 2023 WL 3022495, at *9 (D. Utah Apr. 20, 2023) ("Restated, even if the grand jury transcripts revealed that the prosecutor incorrectly described the elements of a Section 1014 violation, an incorrect description alone does not establish prosecutorial misconduct warranting dismissal."). Yet, as described in the opposition to the motions to dismiss, ECF No. 51 at 2-5, the Indictment properly alleges all elements for Counts One through Seven and so the Defendant has no basis to see the grand jury minutes. *See United States v. Mosby*, No. 22-CR-00007-LKG, 2022 WL 4240835, at *6 (D. Md. Sept. 14, 2022) (denying motion to obtain instructions on perjury charges after rejecting defendant's argument that the indictment alleged the incorrect legal standard).

The cases that the Defendant cites (ECF No. 38 at 5-6) are inapposite because none of those defendants sought to obtain the grand jury minutes by arguing that allegations in the indictment suggested that the government misled the grand jury on the law elements. In *United States v.*

*Stevens*, the court ordered an *in camera* review only after the government conceded in an opposition brief "that a grand juror had asked a question about the advice of counsel defense, and that a response was given." 771 F. Supp. 2d 556, 564 (D. Md. 2011). The government makes no such concession here.

In two of the other cited opinions, the court granted motions to inspect grand jury transcripts only after the defendant identified prosecutorial misconduct with respect to the *factual* presentation to the grand jury. *See United States v. Obiuwevbi*, No. 89 CR 1062, 1990 WL 36733, at *2 (N.D. Ill. Mar. 2, 1990) (granting motion because the defendant had alleged that the government had failed to present a specific document to the grand jury that may have negated the defendant's guilt"); *United States v. Peralta*, 763 F. Supp. 14, 16 (S.D.N.Y. 1991) (ordering production to determine whether "the grand jury was genuinely troubled by the prospect of returning an indictment solely on the basis of Special Agent Cuccinelli's hearsay testimony"). Here, the Defendant does not assert that the government misled the grand jury in its factual presentation.

Lastly, in *United States v. Kilpatrick*, the court granted a motion to inspect the grand jury transcript only after it determined that the government attorneys had engaged in widespread prosecutorial misconduct. 575 F. Supp. 325, 326 (D. Colo. 1983) ("To fully cover all of the headaches of this case would require a volume, and I don't plan to write that book for reasons which will appear presently. Instead, I shall highlight some of the things which occurred during the investigation and during the trial of the case. But, there are so many things to cover that this opinion won't be short."). The Defendant does not make such a claim here.

The Defendant's motion also ignores the evidence that the government produced establishing that the Defendant "knowingly or intentionally acted in an unauthorized manner."

*Ruan*, 597 U.S. at 468; *see also id.* at 457 ("The Government, of course, can prove knowledge of a lack of authorization through circumstantial evidence.").

As just one example, at the request of the FBI, Dr. Chambers wrote an expert report after reviewing the Defendant's Prescription Drug Monitoring Program (PDMP) records as well as patients' medical records, and communications by the Defendant with patients. Ex. B (Chambers FBI Report Excerpts).[2] Dr. Chambers also reviewed audio and video recordings of meetings that the Defendant had with undercover agents acting as patients. He concluded that the "[m]ultiple lines of contextual and patient specific evidence reviewed in this case indicate that [the Defendant's] motivation, knowledge and efforts as an addiction psychiatrist were *deliberately bent, channeled, and employed to operate this drug dealing operation*." *Id.* at USA_001438 (emphasis added). As relevant to knowledge of a lack of authorization, Dr. Chambers found that "there is no way that a physician graduating from an accredited U.S. medical school, fully trained in an accredited psychiatry residency, and addition[al] psychiatry fellowship, and tested and board certified in these fields, does not know the basic and clinical neuroscience of addiction, and the proper standards of documentation, evaluations, diagnosis, and medical treatment (that should include appropriate use of medications and psychotherapies)." *Id.* Yet, despite the Defendant having this knowledge, she "has operated as a large distribution drug dealer and has leveraged her medical privileges, credentials, and training as an addiction psychiatrist, to build, operate and camouflage this business as a highly lucrative and dangerous enterprise, capable of earning her thousands of dollars per hour." *Id.* Based on a review of the Defendant's communications with patients, Dr. Chambers concluded that the Defendant "makes many statements that demonstrate[]

---

[2] The government anticipates that Dr. Chambers, as well as at least the seven patients identified in the Indictment will testify at trial.

her awareness of the significant risk of consequences and harm she is exposing her patients to, while operating as a drug dealer." *Id.*

### C. The Defendant's Factual Disagreement with Count Eight Does Not Justify Releasing the Grand Jury Minutes.

Neither do the Defendant's arguments for obtaining the instructions on Count Eight satisfy the "particularized need" standard. As explained in the government's opposition to the motion to dismiss Count Eight, ECF No. 51 at 6-10, the Indictment sufficiently alleges that the Defendant "distributed" controlled substances, and therefore that does not serve as a basis to obtain the instructions. *See* Fed. R. Crim. P. 6(e)(3)(E)(ii) (there must be a ground to dismiss the indictment based on what occurred before the grand jury).

The Defendant also misreads "principal" purpose when she argues that the Indictment is defective because she prescribed Buprenorphine to *only* 41% of her patients. ECF No. 38 at 7. At trial, the government will need to establish beyond a reasonable doubt that the Defendant "maintained [her] office for the specific purpose of distributing the controlled substances described in the . . . Indictment, but, in so doing, it [will] not need to show that this purpose was the *sole purpose* for which the place was used.'" *Li*, 2019 WL 1126093, at *8 (emphasis added). By the Defendant's own admission, she was prescribing Buprenorphine[3] to a sizable portion of her patients. The government will use the PDMP records cited by the Defendant to help establish that she was maintaining a premises for the purposes of illegally distributing controlled substances. *See, e.g.*, *Nasher-Alneam*, 399 F. Supp. 3d at 567 ("[O]verall practice evidence of the type the government seeks to introduce herein is widely used in prosecutions involving medical establishments under 21 U.S.C. § 856."). Among other evidence, the government will also rely

---

[3] The Defendant also ignores that the grand jury charged her with unlawful distribution of Adderall and Alprazolam.

on Dr. Chambers' expert opinion that "[t]he economic model of [the Defendant]'s business, which ties cash payments fairly strictly to the delivery of drugs (without the provision of medical expertise, or care, or medical charting, etc.) and the efforts of [the Defendant] that instead almost exclusively focuses on the delivery of scripts, logistics of pick-ups, and processing/accumulation of payments, makes this case essentially indistinguishable from large scale illicit street or organized crime-based drug dealing." Ex. B, USA_001438 (Chambers FBI Report Excerpts); *see United States v. Sadler*, 750 F.3d 585, 592 (6th Cir. 2014) (affirming conviction of owner of pain-management clinic who "ordered 216,620 dosage units of controlled substances, which found their way into the pockets of doctors, patients and addicts on the street").

**CONCLUSION**

As discussed herein, the Court should deny the Defendant's following pre-trial motions: ECF Nos. 31, 35, and 38.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:  _____/s/_____
Christopher Sarma
Elizabeth Wright
Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2024, I caused the foregoing to be electronically filed

through this Court's CM/ECF system, which will send notification of such filing to all parties.

/s/ Christopher Sarma
Assistant United States Attorney
